McLAUGHLIN, ADM'R v. THE CREDITORS OF NELMS.

1. An administrator cannot object to the regularity of an order declaring the estate insolvent, made upon his own report.

2. *Quere*, when three commissioners are appointed by the Circuit Judge, to act instead of the Judge of the Orphans' Court, may not two form a court.

3. A former executor, who has resigned his trust, may be a witness against the administrator subsequently appointed.

4. A sheriff appointed *ex officio* administrator, may be cited by the Orphans' Court for settlement, and a decree be rendered against him like any other administrator.

5. A memorandum made by a former executor, of the insolvency of certain debtors of the estate, is not evidence for, or against a succeeding administrator.

6. A judgment against an administrator, in favor of the creditors of an insolvent estate, which is afterwards reversed by him, is not evidence against a preceding administrator, when cited for settlement, of either the validity, or amount of the claims of the creditors ; such claims not having been audited, and allowed, at any term of the court, when he was actually, or constructively present.

Error to the Orphans' Court of Perry.

THE will of Samuel H. Nelms, being produced to the court, and proved, it was established, and letters granted to Edward D. King, the executor appointed under the will, who proceeded in the execution of the trust, and afterwards resigned, when the plaintiff in error was appointed administrator *de bonis non*, with the will annexed, at the January term, 1839 of the court.

At the May term afterwards, the record recites, that the administrator came and reported the estate insolvent, and thereupon it was ordered that publication be made, that a final settlement of the estate would be made on the first Friday in February after, and requiring all who had claims against the estate to file them before that time.

On the 1st May, 1843, His honor Judge Phelan, reciting that John P. Graham, Judge of the Orphans' Court, was incompetent from interest, to preside on the settlement of the

estate, appointed John R. Goree, Isham W. Garrott, and John Lockhart, commissioners who notified the plaintiff in error to appear, and make settlement.

Lockhart, one of the commissioners having resigned, and the Judge of the Circuit Court having been apprised of the fact, he issued a new commission appointing Joseph R. John, together with the two remaining commissioners, to settle the estate.

It also appears from the record, that after the expiration of the term of the plaintiff in error as sheriff, his successor David Chandler was appointed administrator of the estate, and that on the 4th March, 1842, a deoree was rendered against him on settlement, for $8,648 25, which as the decree recites, was found remaining in the hands of McLaughlin, the former administrator. This decree Chandler carried by writ of error, to the Circuit Court, where it was reversed.

The settlement against McLaughlin coming on for trial, he appeared, and it being shown by competent testimony that no effects of the estate ever came to the hands of Chandler, and it appearing that the proceedings against Chandler were founded upon the mistaken supposition, that being then administrator, the proceeding, though in fact against McLaughlin, and who had been cited to appear, should be carried on in the name of Chandler, the Conrt thereupon held, that the said final settlement remained unreversed, and unaltered, as it respected the several amounts found to be due to each of the creditors of Samuel Nelms, deceased, and was in no respect erroneous, except in decreeing that Chandler should pay the money which was then determined to be in the hands of McLaughlin.

The court then proceeded to render a decree against McLaughlin, in favor of the creditors, by name for a specific amount.

In the progress of the settlement, the administrator excepted to the action of the court. First, that the court had no jurisdiction to settle his accounts in this mode, but that the creditors must sue upon his official bond, which the court overruled. Second, to the competency of E. D. King, formerly executor of the estate, as a witness for the creditors, and to prove what effects of the estate came to the hands of

McLaughlin, adm'r v. The Creditors of Nelms.

the plaintiff in error ; and it appearing to the court that he had resigned his office, that his resignation had been accepted by the court, and he had been discharged, the court over-ruled the objection.

The plaintiff in error also offered in evidence certain *memoranda*, made opposite the debtor's names in the inventory, and sale bill, being in these words, "insolvent and no property found;" and also offered to show what these *memoranda* meant by said King, but the creditors objecting, the court excluded the *memoranda*, after King had testified that they were made upon information of others.

The plaintiff in error further insisted, that the claims of the creditors should be proved on this trial, and allowed as in other cases, and that he be permitted to plead the non-presentation of the claims, as in other cases. The court overruled the objection, and allowed the claims without further proof, than was afforded by the decree against Chandler.

From this decree, this writ is prosecuted, and the following errors assigned.

1. The estate was never reported insolvent, and the court had no jurisdiction.

2. The court erred in proceeding after the resignation of Lockhart, one of the commissioners.

3. The court erred in permitting King, the former executor, to be a witness.

4. In deciding that the decree against Chandler was valid against McLaughlin, after its reversal.

5. In refusing to require proof of the presentation, and validity of the claims of the creditors.

6. In the several matters excepted to.

DAVIS, for plaintiff in error, cited 6 Ala. 387.

A. GRAHAM, of Perry, contra, cited 5 Ala. Rep. 117 ; Clay's Dig. 305, § 46.

ORMOND, J.—The first assignment of error is not sustained by the record, as it does appear that the plaintiff in er-

ror, after his appointment, reported the estate insolvent, which report was received by the court, and the creditors required to file their claims. Conceding this to have been informally done, it does not lie in his mouth to object to it. It had the effect of transferring the claims of the creditors to the Orphans' Court, and preventing suits by them against him, and he cannot now be permitted to say, that it was not regularly made.

It might perhaps admit of question, whether, when three commissioners have been appointed to act, instead of the county Judge, when he is incompetent to sit, it would not be competent for two to act, as they are *pro hoc vice* the Orphans' Court; but it is unnecessary to discuss this question because, upon the resignation of Lockhart, a new commission was issued by the Circuit Judge, including the two remaining commissioners, and Mr. John. This, in every view of the case, was sufficient to validate their acts, subsequent to the resignation of Mr. Lockhart. For, conceding that his resignation dissolved the commission, it then becomes necessary to make a new appointment. If it did not dissolve the commission, then it was proper to appoint another in his place, which is the effect of the new commission.

The former executor who had resigned his trust, and had been discharged, was a competent witness against the administrator. He could neither gain or lose by the event of the suit, nor could the decree be evidence for, or against him; he had therefore no interest whatever in the controversy.

It cannot be doubted, that the sheriff when appointed *ex officio* an administrator, is like any other administrator, amenable to the Orphans' Court, and may be required to settle his accounts before that tribunal, and have a decree rendered against him. The act authorizing their appointment, (Clay's Digest, 222, § 10,) puts them on the same footing with other administrators. Such was the opinion of this court at an early day. [The Governor v. Gantt, 1 Stewart, 390.]

If we understand the exception to the rejection of the "memoranda," offered by the plaintiff in error in evidence, it presents the following state of facts : King, the previous executor, in his inventory and sale bill, had written the words "insolvent," and "no property found," opposite the names of

certain persons, and these *memoranda*, the plaintiff in error wished to offer in evidence. There is no possible aspect of the case, in which this act of King could be evidence, either for or against the plaintiff in error. . He ·was only liable to account for the assets of the estate which came to his possession, or had been lost by his neglect. If the design was to show, that certain debts which had been transferred to him by King, could not be collected, from the insolvency of the parties, the fact could not be established by the declaration of a third person. The memoradum of King, whatever might have been its effect upon himself, was, as it respects the plaintiff in error, mere hearsay. · The evidence was therefore properly rejected.

But in rendering judgment against the administrator, without proof that the claims preferred by the creditors were a valid charge against the estate, the court erred. After the expiration of the term of office of the plaintiff in error, his successor, Chandler, was appointed administrator, and against him, it appears, on final settlement a judgment was rendered, ascertaining the claims of creditors against the estate, and rendering a judgment in their favor against him, as administrator. This judgment was reversed. by him on error to the Circuit Court, yet the Orphans' Court considered the judgment to be in force, so far as it related to the judgment in favor of. each creditor, and only void against Chandler, because the decree itself recited, that he had never received any portion of the effects of the deceased, which continued in the possession of the plaintiff in error, the former administrator.

If it were conceded that this is the effect of the reversal, as it respects Chandler, it would avail nothing in this case. Each administration upon the estate, is separate and distinct, and the acts or omissions of one, do not bind or conclude the other. Thus in Lambeth and wife v. Garber, 6 Ala. 870, it was held, that a report that the estate was insolvent by one administrator, had no effect whatever upon a succeeding administrator *de bonis non.* Neither the decree against Chandler, or any of its incidents, are of any force, or validity whatever, for or against his predecessor. It is as to him a matter *res inter alias acta.* .

It appears to have been supposed by the commissioners, that the facts recited by them, explained the decree rendered against Chandler, and showed that it was rendered against him by mistake, and was intended to operate against the plaintiff in error. However the fact may be in this particular, it is clear that it is not a judgment which binds McLaughlin, and cannot be made to have that effect by extrinsic testimony.

This proceeding commenced as far back as 1839, at which time the plaintiff in error reported the estate insolvent, and obtained an order agaist the creditors, requiring them to file their claims, and by the law then in force, and not by the act of 1843, must the proceeding be governed. By that law, the mere filing of a claim was no proof of its correctness. In Askew v. Weissinger, it is said, that if a sworn account is filed, it would be *prima facie evidence* of the claim, but if other proof was required, it would be necessary that it should be made; and that a claim against an insolvent estate, must like any other if contested, be proved according to the course of the common law. [6 Ala. 907.]

The administrator, it appears, required proof that the claims of these creditors were a valid charge upon the estate, and the court held, that the fact that they were so recognized in a suit against another person, was sufficient evidence of their validity. As the plaintiff in error was not a party to that suit, he is not concluded by the action of the court upon it. These claims do not appear to have been audited, and allowed at any previous term of the court, when the plaintiff in error was actually, or constructively present. This is an error for which the judgment must be reversed, and the cause remanded for further proceedings.